

**FILED & ENTERED**

**SEP 01 2023**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** kaaumoan **DEPUTY CLERK**

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>DARLYNE ELAINE LUCCHESI,<br><br><br><br>Debtor(s). | Case No.: 2:23-bk-11630-WB<br><br>CHAPTER 13<br><br>**MEMORANDUM OF DECISION**<br><br>Date:       August 23, 2023<br>Time:      1:30 PM<br>Courtroom: 1375 |

     Before the Court is the motion of debtor, Darlyne Elaine Lucchesi ("Debtor), to reconsider ("Motion") the Order entered on the docket on July 13, 2023, dismissing this case with a 180-day bar to refiling pursuant to bad faith ("Dismissal Order")[1] [Docket No. 71]. The Court conducted a hearing on the Motion on August 23, 2023. Having considered the pleadings, argument raised at the hearing, and the record as a whole, and for the reasons explained below, the Motion will be denied.

---

[1] While the Dismissal Order states that the case was dismissed under 11 U.S.C. § 109(g), it was dismissed for bad faith as stated on the record at the hearing held on July 12, 2023.

-1-

Main Document    Page 2 of 11

## FACTS

### A. Prepetition Events

Debtor, at one point, owned four parcels of real property in Orange County and Los Angeles County, which she valued at over $7 million. In 2006, she refinanced all her properties with loans from Countrywide Home Loans Inc. ("Countrywide"). The loans were later acquired by Bank of America N.A. ("Bank of America").

In 2018, Debtor filed an action in state court against Countrywide, Bank of America, Nationstar Mortgage Servicing LLC ("Nationstar"), Specialized Loan Servicing, LLC ("SLS") and U.S. Bank National Association as trustee for the holders of the WMALT 2006-AR4 Trust ("U.S. Bank") concerning the Countrywide loan for her property located at 220 8th Street, Seal Beach, California 90740 (the "Seal Beach Property"). In the state court action, Debtor sought to cancel the deed of trust for the Seal Beach Property under various theories. The action was dismissed with prejudice after the state court sustained the defendants' demurrer to Debtor's third amended complaint without leave to amend. Judgment was entered for the defendants. Debtor appealed. The appellate court affirmed the judgment.

### B. Prior Bankruptcy Cases

Debtor first filed for chapter 7[2] relief in March 2015, Case No. 2:15-bk-13222-VZ, and received a discharge in June 2015. Debtor then filed her second bankruptcy case under chapter 13 in April 2016, Case No. 8:16-bk-11581-TA. The second case was dismissed for failure to file information. One month later, Debtor filed a third case also under chapter 13, Case No. 2:16-bk-16262-WB. Debtor converted the third case to one under chapter 11 in July 2016; it was dismissed in February 2017. Debtor was represented by counsel in all these prior cases.

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Then, in November 2022, Debtor *in pro per* filed her fourth case under chapter 13 in the Central District of California, Santa Ana Division, Case No. 8:22-bk-11872-MH. In her petition, Debtor listed the Seal Beach Property as her primary residence. In her accompanying original schedules, Debtor listed assets valued at $7,526,833.00, liabilities of $4,833,365.00 (of which she denoted only $39,998.00 was owed), monthly income of $2,239.00, and expenses of $1,502.00. Her Schedule A/B also identified rental property located at 2018 Glendon Avenue, Los Angeles California 90025 (the "Glendon Avenue Property"). Two other properties were identified as located at 2028 Holmby Avenue, Los Angeles, CA 90025 (a single-family residence) and 13435 N. Cook Court, Tustin Ranch, CA (a condo) but listed as the titles having been "stolen/hijacked".

In Debtor's chapter 13 plan, Debtor proposed a step-plan to pay a 100% dividend to unsecured creditors over a 60-month period totaling $57,060.00. According to the plan, Debtor intended to dispute all the mortgage liens on her properties that she contended were void. No secured claims or arrearages were provided for in the plan.

Secured creditors filed objections to confirmation.

The chapter 13 trustee, Amrane Cohen ("Trustee Cohen"), filed an objection to the plan and moved to dismiss or convert the case. In the objection, Trustee Cohen stated that the scheduled secured debt of $4,804,367.00 and disclosed unsecured debt of $110,798.00 exceeded the debt limit for chapter 13 of $2,750.000[3]. Trustee Cohen noted that while Debtor subsequently filed an amended Schedule D which changed the amounts of the secured debts to $0, he contended it was filed in bad faith to manufacture eligibility after the issue was raised at the § 341(a) meeting. Among other issues, Debtor's plan failed to provide

---

[3] At the time Debtor filed her bankruptcy petition, only individual debtors with noncontingent and liquidated debt of less than $2,750,000.00 were eligible for chapter 13 relief. *See* § 109(e).

for secured claims pursuant to the creditors' filed proofs of claim. Moreover, Trustee asserted the plan was largely unintelligible and could not be administered.

At the January 19, 2023 plan confirmation hearing, the court denied confirmation. Debtor was offered the option to convert her case to chapter 7 within 10 days, or have her case dismissed.

On January 27, 2023, Debtor filed a motion to convert her case to one under chapter 11. Without ruling on the motion to convert, the court entered its dismissal order on January 30, 2023.

Debtor filed a motion to reconsider on February 13, 2023 and a motion to vacate case dismissal the following day. Both motions were denied after argument and hearings on March 9, 2023 and March 16, 2023, respectively. Court orders denying the motions were entered shortly thereafter. Debtor did not appeal the decisions.

**C. Present Bankruptcy Case**

Five days after the court denied the motion to vacate dismissal, Debtor *in pro per* filed the current chapter 13 case on March 21, 2023. This is Debtor's fifth bankruptcy case over an eight-year period. In her petition, she asserted a dual residency in the Seal Beach Property and the Glendon Avenue Property. Debtor designated the Seal Beach Property as her mailing address. In the accompanying schedules, Debtor listed the properties as valued at $4,700,000.00 and sought a homestead exemption in the Seal Beach Property. Debtor listed liabilities of $58,273.00, within the debt limit. She indicated that she had no secured debt. Her Schedule D identified first and second liens on both properties and listed them as disputed in the amount of $0.0. Debtor stated her monthly income was $3,058.94 and expenses were $1,021.94.

Debtor's first proposed chapter 13 plan ("Plan #1"), filed on May 2, 2023, provided a step-plan to pay a 100% dividend to unsecured creditors over 60-months totaling $53,683.00. According to the plan, Debtor intended to litigate the

validity and enforceability of the mortgage liens in her bankruptcy case and to "strip" the second position lien on the Seal Beach Property.

Secured creditors, upon learning of the bankruptcy, filed proofs of claim against Debtor's estate totaling $6,829,054.41.[4]

The chapter 13 trustee, Nancy Curry ("Trustee Curry"), filed an objection to Plan #1 on May 24, 2023. Trustee Curry stated that the filed secured proofs of claim exceeded the statutory limits of § 109(e), and therefore Debtor was ineligible for chapter 13 relief. Trustee Curry also argued that neither the plan nor the petition had been filed in good faith[5]. Trustee Curry alleged that, since Debtor's prior case was dismissed, and because she appears to have misrepresented her principal residence by claiming a dual residency in the present case, the only reason Debtor filed her case in this division was to forum shop. By filing in this division, Debtor improperly seeks to avoid the prior court's adverse ruling against her.

---

[4] The proofs of claim filed by the secured creditors were as follows:
- Claim No. 3 filed by The Bank of New York Mellon f/k/a The Bank of New York as successor Indenture trustee to JPMorgan Chase Bank, National Association for CWHEQ Revolving Home Equity Loan Trust, Series 2006-F, in the amount of **$553,489.23**, secured by a second priority lien on the Seal Beach Property.
- Claim No. 6 filed by Real Time Resolutions, Inc., as agent for The Bank of New York Mellon fka The Bank of New York, Successor Indenture Trustee to JPMorgan Chase Bank, N.A., as Indenture Trustee on behalf of the noteholders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2006-B, in the amount of **$409,313.52**, secured by a second priority lien on Glendon Avenue Property.
- Claim No. 10 filed by U.S. Bank National Association, as Trustee, successor in interest Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR4 Trust, in the amount of **$2,109,503.61**, secured by a first priority lien on the Seal Beach Property.
- Claim No. 12 filed by The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-OA14, Mortgage Pass-Through Certificates, Series 2006-A14, in the amount of **$3,756,748.05**, secured by a first priority lien on the Glendon Avenue Property.

[5] Pursuant to § 1325(a)(3) and (a)(7), respectively.

Secured creditors filed objections to confirmation. Among them was Real Time Resolutions, Inc.'s ("RTR") as agent for the Bank of New York Mellon, objection. RTR states that Debtor raised these same arguments regarding the validity of the mortgage liens against Bank of America, Countrywide, Nationstar and SLS in state litigation and the appellate court determined that the arguments had no merit.

The Court conducted an initial confirmation hearing on June 7, 2023. At Debtor's request, the confirmation hearing was continued to allow Debtor additional time to address the issues raised in the objections.

Before filing any response, Debtor filed a first amended plan ("Plan #2") on June 27, 2023. Debtor proposed a step-plan to pay unsecured creditors over 36-months totaling $24,859.76, still allegedly a 100% dividend.  Plan #2 also included Attachment A wherein Debtor listed the lienholders and their respective lien priority and declared each void citing various reasons. All other aspects of the plan remained unchanged.[6]

Next, Debtor filed her omnibus response to the objections to Plan #1 made by the secured creditors and Trustee Curry. Her response is largely incoherent. To the extent any sense can be made of it, it fails to address the critical issues raised in the objections. Debtor's response primarily attacks the validity of the liens as either being charged off, showing a zero balance or revived by fraud.[7] Debtor contends, moreover, that her prior chapter 7 discharge in June 2015 had extinguished all the debts.

At the continued confirmation hearing on July 12, 2023, after all parties had been heard and following a short recess, the Court announced its findings of fact, conclusions of law and decision regarding confirmation. The Court held that the totality of the circumstances had established Debtor's bad faith in filing this case,

---

[6] Two secured creditors filed objections to Plan #2.
[7] On July 11, 2023, Debtor filed an objection to Claim No. 12 filed by The Bank of New York Mellon who holds the first priority lien on the Glendon Avenue Property.

and that bad faith constituted cause for the Court's dismissal of Debtor's case with a 180-day bar.[8] In dismissing Debtor's case with prejudice, the Court employed and considered the "bad faith" factors enumerated in *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999).

In *Leavitt*, the Ninth Circuit held that when considering dismissal of a chapter 13 case due to bad faith in its filing, a bankruptcy court should consider: (1) whether the debtor misrepresented facts in the petition or plan, unfairly manipulated the Code, or otherwise filed the petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present. *Leavitt,* 171 F.3d at 1224.

Here, the Court held that the totality of the circumstances surrounding Debtor's case demonstrated that the case had been field in bad faith. In Debtor's prior bankruptcy case, Debtor listed her primary residence as the Seal Beach Property and her income-producing property as the Glendon Property. In the present case, Debtor declared a "dual residency" status with both the Seal Beach Property and the Glendon Property. But she claimed a homestead exemption in the Seal Beach Property and listed it as her mailing address. The Court found that Debtor misrepresented facts in the petition and schedules as to her residence and unfairly manipulated the Code and engaged in forum shopping. Debtor filed her chapter 13 case in the Los Angeles division attempting an "end-run" around the dismissal of her prior chapter 13 case by Judge Houle and his rulings against her.

The Court also questioned Debtor's eligibility to be in chapter 13, as the trustee had in the prior case. In Debtor's prior case, she identified all the mortgage debts. In this case, she listed each of the secured claim amounts as zero. The Court found that the secured creditors filed proofs of claim with supporting documentary

---

[8] A motion to avoid lien was scheduled to be heard on the Court's afternoon calendar after the morning confirmation hearing. Pursuant to dismissal of Debtor's case, that matter was vacated.

evidence in amounts that far exceed the eligibility requirements for a chapter 13 case. The Court noted that it can look beyond Debtor's schedules to determine whether her debt exceeds the statutory amounts if there is a bad faith allegation. *Quintana v. IRS (In re Quintana),* 107 B.R. 234, 238-39 n.6 (9th Cir. BAP 1989), *aff'd,* 915 F.2d 513 (9th Cir. 1990); *cf. Scovis v. Henrichsen (In re Scovis),* 249 F.3d 975, 982 (9th Cir. 2001) (Ninth Circuit held "eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith.") Here, the secured creditors filed objections to the plan, the basis of which included bad faith. Debtor's plan did not provide for any of the secured claims. The only evidence that the loans were void was Debtor's assertion that at one time the credit companies indicated a zero balance.

Ultimately, the Court found that Debtor's case lacked a valid bankruptcy purpose. Allowing Debtor's case to remain open would enable her to continue to benefit from the automatic stay while pursuing purely state law claims against the secured creditors in the bankruptcy court. There was no purpose to pay debts and receive a discharge. Its purpose was only to further delay secured creditors' ability to exercise their rights with respect to the properties. The Court concluded that Debtor's prior history of cases overwhelmingly favored dismissal with a bar. Debtor had misrepresented facts in her petition, schedules and plan and unfairly manipulated the Code in an inequitable manner. The Court ruled that Debtor's conduct was egregious and in bad faith, warranting dismissal with prejudice.

On July 13, 2023, the Court entered its order dismissing the case with a 180-day bar to refiling.

Debtor filed the instant Motion on July 22, 2023. Trustee filed an opposition on August 9, 2023 and Debtor filed her reply on August 15, 2023.

//
//

# DISCUSSION

Debtor moved for reconsideration of the Dismissal Order under Rule 59 and Rule 60. A motion for reconsideration is treated as a motion to alter or amend a judgment under Rule 59(e), made applicable by Rule 9023, if it is filed within fourteen days of entry of judgment. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 898-99 (9th Cir. 2001). Otherwise, it is treated as a motion for relief from a judgment or order under Rule 60(b), made applicable by Rule 9024. *See* Fed. R. Bankr. P. 9023. The Motion here was filed within eleven days of the Court's entry of the Dismissal Order, so it is properly construed as a Rule 59(e) motion.

Under Rule 59(e), the Court may reconsider a previous order or judgment only if the movant can show at least one of the following grounds: (1) to allow the moving party to present newly discovered evidence that was not available at the time of the original hearing; (2) to correct clear errors of law or fact upon which the judgment is based; (3) to prevent manifest injustice; or (4) to reflect an intervening change in controlling law. *McDowell v. Calderon,* 197 F.3d 1253, 1255 (9th Cir.1999), *cert. denied,* 529 U.S. 1082 (2000); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (Rule 59(e) motion should not be granted, "absent highly unusual circumstances, unless the [bankruptcy] court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."); *Jeffries v. Carlson (In re Jeffries),* 468 B.R. 373, 380 (9th Cir. BAP 2012). "A 'manifest injustice' is defined as 'an error in the trial court that is direct, obvious, and observable.' " *Brooks v. Tarsadia Hotels*, 2020 WL 601643, at *5 (S.D. Cal. Feb. 7, 2020) (quoting *Smith v. City of Quincy*, 2011 WL 1303293, at *1 (E.D. Wash. Apr. 5, 2011)); *see also Manifest Injustice*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "manifest injustice" as an error in the trial court that is "direct, obvious, and observable").

Reconsideration is "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.' " *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal citation omitted). A motion for reconsideration may not be used "to rehash the same arguments made the first time or simply express an opinion that the court was wrong." *In re Greco*, 113 B.R. 658, 664 (D. Haw. 1990), *aff'd and remanded sub nom. Greco v. Troy Corp.*, 952 F.2d 406 (9th Cir. 1991); *see also In re Mannie*, 299 B.R. 603, 608 (Bankr. N.D. Cal. 2003) (internal citation omitted) ("A motion to reconsider should not be used 'to ask the court "to rethink what the court had already thought through—rightly or wrongly"—or to reiterate arguments previously raised.' ").

Debtor argues that the Dismissal Order should be reconsidered, and this Court should reinstate the automatic stay in her case so that she can litigate her claims against the secured creditors in the bankruptcy court. Debtor's Motion is often rambling and incoherent making it difficult to parse. Debtor recites, in length, aspects of her ongoing argument that the mortgage liens are unsupported, discharged or void and should be removed under various theories of fraud and wrongdoing by the secured lenders. Debtor repeats her argument that because there is zero secured debt, she is eligible to file chapter 13, which the Court considered in its dismissal of Debtor's case at the confirmation hearing. But "a motion for reconsideration … does not provide a forum for the non-prevailing party to reargue issues that the Court has already decided." *Herschaft v. New York City Campaign Fin. Bd.,* 139 F.Supp.2d 282, 285 (E.D. N.Y. 2001).

Debtor also argues venue is proper in Los Angeles as her principal asset is located here. Debtor misapprehends the Court's basis for dismissal of her case. Considering the totality of the circumstances, the Court found that Debtor acted in bad faith in filing her chapter 13 petition. Debtor's filing of her bankruptcy case in the Los Angeles division was for an improper purpose, namely as a means to forum shop. Debtor's motivation in filing this case in Los Angeles is inferred from

the timing of her filing; the fact that only five days after the Santa Ana court had denied her motion to vacate the dismissal order in her prior case, Debtor refiled in Los Angeles under chapter 13 again simply to obtain a different judge. In the current filing, Debtor claimed a dual residency status in this case, a change from her claim that the Seal Beach Property was her sole residence in the prior case. She modified her schedules to eliminate secured debt and manufacture eligibility.

Debtor has not directed the Court to any intervening change in controlling law, the availability of new evidence, a clear error by the Court, or the prospect of manifest injustice. She has not identified any controlling authority that the Court overlooked, or factual matters that the Court ignored. And Debtor has not identified the kind of extraordinary circumstances that would warrant this unusual relief.

Debtor has articulated no basis on which the Court could grant the Motion. A motion to reconsider may not be used to present new legal arguments or to rehash prior arguments. *In re JSJF Corp.,* 344 B.R. 94, 103 (9th Cir. BAP 2006).

## CONCLUSION

Debtor has not satisfied her burden under Rule 59(e) to establish a right to relief from the Court's order dismissing her case. Accordingly, Debtor's motion for reconsideration will be DENIED. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: September 1, 2023

Julia W. Brand
United States Bankruptcy Judge